**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**WILLIAM HUFFORD**                                                                                    **PLAINTIFF**
**ADC #89747**

**v.**                                     **Case No. 4:21-CV-00388-LPR**

**SOLOMON GRAVES, in his official capacity as**
**Secretary of the Department of Corrections; and**
**DEXTER PAYNE, in his official capacity as**
**Director of the Arkansas Division of Correction**                                    **DEFENDANTS**

**ORDER**

Plaintiff William Hufford instituted this action pro se on May 10, 2021.[1]  Mr. Hufford was

one of many Arkansas state inmates who filed lawsuits challenging Arkansas Act 1110 of 2021.

On August 23, 2021, the Court consolidated all of the Act 1110 cases and chose three cases as

representative test cases.[2]  On December 1, 2021, the Court administratively stayed "[a]ll other

cases (and motions in those other cases) . . . ."[3]  Mr. Hufford's case was not one of the three test

cases.  So his case was stayed.

On March 16, 2022, the Court entered a final Order and Judgment in the three test cases.[4]

That same day, the Court ordered the administrative termination of all the other cases (including

Mr. Hufford's case) that had been stayed pending the outcome of the three test cases.[5]  The Court

did this because its final Order and Judgment in the three test cases "likely address[ed] or moot[ed]

---

[1] Compl. (Doc. 2).

[2] Order (Doc. 14) at 5–6.

[3] *Hayes v. Rutledge*, 4:21-cv-00347 (Doc. 254) [*hereinafter Hayes Master Docket*].  The three test cases were *Hayes*, *Lamar v. Hutchinson*, 4:21-cv-00529, and *Holloway v. Ark. Gen. Assembly*, 4:21-cv-00495.

[4] *Hayes Master Docket*, (Docs. 422 & 423).

[5] Order (Doc. 15).

most of the other cases . . . ."[6]   The Court acknowledged, however, that plaintiffs in the administratively terminated cases may "believe[] there is still a live claim (related to Act 1110 or otherwise) to adjudicate."[7]   The Court therefore "allow[ed] each plaintiff in the various administratively terminated cases to move to re-open their case . . . ."[8]

On April 18, 2022, Mr. Hufford filed a Motion to Reopen Case.[9]  Mr. Hufford contended that, because the Court did not rule on each case individually, the plaintiffs in the stayed cases "should have their filing fees returned to them."[10]  While Mr. Hufford used the word "returned," it was clear from the context that Mr. Hufford was primarily seeking costs from Defendant.[11] Specifically, Mr. Hufford requested that the Court reopen his case and decide it on the merits consistent with the Court's ruling in *Hayes v. Rutledge*.[12]  The Court granted the Motion in part, reopening the case while emphasizing that Mr. Hufford was not yet a "prevailing party" entitled to costs because he had not succeeded in his individual case.[13]  Defendants then filed the Motion to Dismiss presently pending before the Court.[14]  Defendants argue, among other things, that Mr. Hufford's case should be dismissed because (1) it has become moot and (2) the doctrine of sovereign immunity bars trial on any still-live controversy.[15]

---

[6] *Id.* at 11.

[7] *Id.*

[8] *Id.*

[9] Pl.'s Mot. to Reopen (Doc. 18).

[10] *Id.* at 2.

[11] *Id.* ("[W]hen a plaintiff prevails . . . he is awarded his filing fees.") (first citing *Shabazz v. Norris*, No. 5:03-cv-00401, 2007 WL 2819517 (E.D. Ark. Sept. 26, 2007), and then citing *Hester v. Norris*, No. 2:08-cv-00123, 2009 WL 1286851 (E.D. Ark. May 8, 2009)).

[12] *See id.*

[13] Order (Doc. 21) at 3.

[14] Defs.' Mot. to Dismiss (Doc. 25).

[15] Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 26) at 3–5, 17.

Mr. Hufford's operative Complaint says that he will receive all three federal stimulus payments: $1,200 from the Coronavirus Aid, Relief, and Economic Security (CARES) Act; $600 from the Consolidated Appropriations Act (CAA); and $1,400 from the American Rescue Plan Act (ARPA).[16]  By the time he filed that operative Complaint, he had already received (and Defendants had already confiscated) his CARES Act and CAA payments.[17]  In their Motion to Dismiss papers, Defendants acknowledge that, in July of 2021, they confiscated $1,807.26 of stimulus funds from Mr. Hufford.[18]  But they go on to say that, in compliance with this Court's rulings in the three test cases, they paid $319 in filing fees on behalf of Mr. Hufford and then deposited the remaining $1,488.26 into Mr. Hufford's inmate account.[19]

Mr. Hufford's claims with respect to his confiscated CARES Act and Consolidated Appropriations Act payments neatly fall into two buckets.  The first bucket covers the $319 of his confiscated stimulus monies that Defendants used to pay filing fees.  The second bucket covers any confiscated stimulus monies left over after the payment of Mr. Hufford's filing fees.  Mr. Hufford's bucket-one claims must be dismissed.  They are barred by the doctrine of sovereign immunity.  Mr. Hufford's lawsuit against Defendants only named them in their official capacities, which means the lawsuit is one against the State of Arkansas.[20]  The doctrine of sovereign immunity clearly applies.  And, unlike in the test cases discussed above, the *Ex Parte Young* exception does not apply here.  That is because the money Mr. Hufford wants returned—the

---

[16] Am. Compl. (Doc. 11) ¶¶ 35, 39.

[17] *Id.* ¶¶ 2, 36–37.

[18] Ex. 1 (Jerry Decl.) to Defs.' Mot. to Dismiss (Doc. 25-1) ¶ 4.

[19] *Id.* ¶¶ 5, 6.  The Court is able to "consider[] matters outside the pleadings" because a motion to dismiss for mootness is an attack on subject-matter jurisdiction.  *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (citation omitted).

[20] *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017).

$319—has already been disbursed by Defendants.[21]  Accordingly, if the Court were to order its "return," the money would necessarily have to flow from the State of Arkansas's treasury.  And "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."[22]  The bucket-two claims must also be dismissed because they are moot: Defendants have already returned those monies to Mr. Hufford.[23]

That leaves Mr. Hufford's ARPA-based claims.  Mr. Hufford's ARPA payment is currently unaccounted for.  The Complaint says that he is entitled to receive an ARPA payment but does not say that he has actually received it yet.[24]  And the factual updates contained in subsequent filings don't shed any light on the status of Mr. Hufford's ARPA payment.  Thus, on this record and at this posture, the Court assumes that Mr. Hufford will be receiving an ARPA payment in the near future.  In his operative Complaint, Mr. Hufford seeks declaratory and injunctive relief to prevent Defendants from enforcing Act 1110 as to that ARPA payment.[25]  Such requests are not barred by sovereign immunity because of the *Ex Parte Young* exception.[26]  And because Mr. Hufford is trying to prevent an injury that hasn't occurred, the ARPA-based declaratory and injunctive relief requests are not moot (with one small exception, discussed in Section C below).  Accordingly, the

---

[21] Like mootness, sovereign immunity is a question of subject-matter jurisdiction, therefore the Court may look to facts outside the pleadings.  *See supra* note 19; *see also Riley v. United States*, 486 F.3d 1030, 1031–32 (8th Cir. 2007).

[22] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

[23] Mr. Hufford's requests for declaratory and injunctive relief, *see infra* notes 24–25 and accompanying text, are also moot insofar as he seeks that relief with respect to the CARES Act or CAA payments.  Declaratory judgments and injunctions are prospective relief; they are not appropriate when a plaintiff wants a court "simply to proclaim liability for a past act."  *Justice Network, Inc. v. Craighead Cnty.*, 931 F.3d 756, 764 (8th Cir. 2019) (citation omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("[S]tanding to seek the injunction requested depend[s] on whether [the plaintiff is] likely to suffer future injury . . . .").

[24] Am. Compl. (Doc. 11) ¶¶ 2, 35–39.

[25] *Id.* at 17–18.

[26] *McDaniel v. Precythe*, 897 F.3d 946, 951–52 (8th Cir. 2018) ("Under the exception established in *Ex Parte Young*, . . . a private party may sue state officials in their official capacities for prospective injunctive relief.").

4

Court addresses the merits of Mr. Hufford's ARPA-based claims.

Mr. Hufford brings four claims: (1) Act 1110 is preempted by the doctrine of obstacle preemption; (2) Act 1110 is void for vagueness under the Fourteenth Amendment; (3) enforcement of Act 1110 violates procedural due process; and (4) enforcement of Act 1110 violates the doctrine of substantive due process.[27]  The Court addresses each claim in turn.

## A.       Obstacle Preemption

In the three test cases, the Court thoroughly addressed the doctrine of obstacle preemption and its effect (or lack thereof) on this case.[28]  As an initial matter, Mr. Hufford can't bring any preemption claim because the federal stimulus statutes neither provide a private right of action nor create rights that are privately enforceable under 42 U.S.C. § 1983.[29]  The same is true for the Supremacy Clause itself.[30]  And that's not Mr. Hufford's only problem.  Even if he were able to bring an obstacle preemption claim in this case, it would fail on the merits.  Act 1110 expressly states that its provisions do not apply when "prohibited by federal law."[31]  "A state statute that renders its provisions inapplicable where they would otherwise be preempted essentially saves itself from formal preemption."[32]  For these reasons, Mr. Hufford's obstacle preemption claim must be dismissed.

## B.       Void for Vagueness

A law is unconstitutionally vague when it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant

---

[27] Am. Compl. (Doc. 11) ¶¶ 40–85.

[28] *Hayes Master Docket*, (Doc. 422) at 16–18; *Hayes Master Docket*, (Doc. 79) at 6–12.

[29] *Hayes Master Docket*, (Doc. 422) at 16–17; *Hayes Master Docket*, (Doc. 79) at 6–10.

[30] *Hayes Master Docket*, (Doc. 422) at 17; *Hayes Master Docket*, (Doc. 79) at 6.

[31] Ark. Code Ann. § 12-29-120(a).

[32] *Hayes Master Docket*, (Doc. 79) at 12.

dangers of arbitrary and discriminatory application."[33]  Two principles guide the Court's analysis of Mr. Hufford's void-for-vagueness claim.  First, the Constitution does not require Act 1110 to provide "perfect clarity and precise guidance."[34]  Second, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."[35]

Mr. Hufford argues that Act 1110's use of the phrase "federal relief or stimulus funds" is unconstitutionally vague because it "is an imprecise term that is susceptible to more than one reasonable interpretation."[36]  The Court disagrees.  Act 1110 is by no measure a model of precise drafting.  But it does not have to be.  The question is whether a person "of common intelligence must necessarily guess at its meaning and differ as to its application."[37]  In answering this question, the Court adheres to the principle that the words of the text "should be interpreted as taking their ordinary meaning at the time" of enactment.[38]  The Court will therefore look to the text, structure, and historical context of Act 1110.

Act 1110 was signed into law in May of 2021.  At that time, the terms "federal relief" or "stimulus funds" brought only one thing to the ordinary American's mind—money from the federal government sent directly to people and businesses to alleviate the economic repercussions of the COVID-19 pandemic.  For over a year leading up to the enactment of Act 1110, discussions and debates over the federal government passing "stimulus" and "relief" bills were in the news on

---

[33] *D.C. v. City of St. Louis*, 795 F.2d 652, 653 (8th Cir. 1986) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).

[34] *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

[35] *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982).

[36] Am. Compl. (Doc. 11) ¶ 60.

[37] *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

[38] *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (cleaned up).

a regular basis.[39]   Indeed, these terms have such an agreed upon meaning in contemporary American culture that they have reached "meme" status.[40]  Act 1110's "emergency clause" further proves the point.  That clause expressly refers to "federal relief funds related to coronavirus 2019 (COVID-19) recovery . . . ."[41]  Thus, an ordinary person of common intelligence would not have to guess at Act 1110's meaning.

In determining that Act 1110 is not unconstitutionally vague, the Court has also considered the "nature of the enactment."[42]  If Act 1110 is penal, i.e., intended to punish, then it might be subject to "a strict test of specificity."[43]  In *Trop v. Dulles*, the Supreme Court made clear that a law is not penal *per se* simply because its applicability depends on whether someone has committed a crime:

> The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect.  The controlling nature of such statutes normally depends on the evident purpose of the legislature.  The point may be illustrated by the situation of an ordinary felon.  A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote.  If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statutes authorizing

---

[39] *E.g.,* Kelly Anne Smith, *Your Guide to the Federal Stimulus Package*, Forbes (Mar. 27, 2020), https://tinyurl.com/ynrjc6ze; *COVID-19 Stimulus Bill: What it Means for States*, National Conference of State Legislatures (Apr. 2, 2020), https://tinyurl.com/can4traf; Kate Davidson & Paul Kiernan, *Coronavirus Stimulus Funds Are Largely Depleted After Nine Weeks*, Wall Street Journal (June 3, 2020), https://tinyurl.com/e598298v; Garrett Watson & Erica York, *Congress Passes $900 Billion Coronavirus Relief Package*, Tax Foundation (Dec. 21, 2020), https://tinyurl.com/2aznk3av; *COVID-19 Economic Relief Bill*, National Conference of State Legislatures (Jan. 4, 2021), https://tinyurl.com/5h69j78v; Jacob Pramuk, *Biden Signs $1.9 Trillion Covid Relief Bill, Clearing Way for Stimulus Checks, Vaccine Aid*, CNBC (Mar. 11, 2021), https://tinyurl.com/59fja79c; Thomas Kaplan, *What's in the Stimulus Bill?  A Guide to Where the $1.9 Trillion is Going*, New York Times (Mar. 30, 2021), https://tinyurl.com/4symwfem; Jessica Menton, *Will There Be a Fourth Stimulus Check? Americans Are Looking for Clues*, USA Today (Apr. 30, 2021), https://tinyurl.com/3s9zpfbu.

[40] *See* Rachel E. Greenspan, *Americans Have Started to Receive Their $1,200 Coronavirus Stimulus Package Checks, and the Memes Are Priceless*, Insider (Apr. 17, 2020), tinyurl.com/3jbym8k9.  A meme is "an idea, behavior, style, or usage that spreads from person to person within a culture."  Meme, Merriam-Webster Online Dictionary, https://tinyurl.com/hn59k937.

[41] Arkansas Act 1110 of 2021 § 3.

[42] *Village of Hoffman Ests.*, 455 U.S. at 498.

[43] *City of St. Louis*, 795 F.2d at 654 (noting that laws with criminal penalties must be strictly construed); *see also Village of Hoffman Ests.*, 455 U.S. at 498 (stating that if the penalty is civil instead of criminal, then a higher degree of vagueness is tolerable).

both disabilities would be penal.  But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise.[44]

Under this standard, Act 1110 is not penal.  Any funds collected under Act 1110 are first used to pay off the inmate's court fines, fees, costs, and restitution.  The Eighth Circuit has previously stated that diverting an inmate's money towards paying off a previously ordered restitution is a benefit to the inmate.[45]  It would be contradictory for this Court to now categorize it as a punishment.  The same goes for court fines, fees, and costs.  As for the excess stimulus funds, the State asserts an interest in providing for the welfare of inmates within the ADC. Act 1110's text evidences that purpose by using the excess funds "for the general benefit of the inmates . . . ."[46] Some may question the State of Arkansas's policy rationale.[47]  Others may have suspicions as to how the money would actually be used.  Nevertheless, the text does not indicate an intent to punish. Act 1110 is not penal.  The Constitution therefore allows for a higher degree of vagueness than might otherwise be tolerable.  Mr. Hufford's void-for-vagueness claim will be dismissed.

## C.  Procedural Due Process

In the three test cases, the Court held that enforcement of Act 1110 violates the Fourteenth Amendment's procedural due process clause to the extent that Defendants retain funds in excess of those necessary to pay an inmate's court fines, fees, costs, and restitution.[48] The Court entered a permanent injunction prohibiting Defendants from permanently retaining or using such excess

---

[44] 356 U.S. 86, 96–97 (1958).

[45] *Mahers v. Halford*, 76 F.3d 951, 955 (8th Cir. 1996) ("When an inmate leaves prison, he leaves with his restitution debts.  Any payment of those debts while the inmate is incarcerated will work to his ultimate benefit.").  The Court sees no reason to think *Mahers* would not extend to diverting an inmate's money to pay court fines, fees, and costs.

[46] Ark. Code. Ann. § 12-29-107.  Act 1110 diverts excess stimulus funds in equal parts to an inmate welfare fund under Section 12-29-107 and the Division of Correction Inmate Care and Custody Fund Account.

[47] *Cf. Hayes Master Docket*, (Doc. 79) at 23 (noting that the State's collective-benefit-as-just-compensation argument could be described as "dystopian, Orwellian, [or] Kafkaesque").

[48] *Hayes Master Docket*, (Doc. 422) at 10–11; *Hayes Master Docket*, (Doc. 79) at 13–19.

funds.[49]   Accordingly, Mr. Hufford's procedural due process claim is moot to the extent that it challenges Defendants' ability to permanently retain or use any confiscated stimulus funds in excess of the funds necessary to pay off any outstanding court fines, fees, costs, or restitution.  The Court's declaration and injunction in *Hayes* has given Mr. Hufford the relief he seeks here on that point.

Mr. Hufford's procedural due process claim fails on the merits to the extent it challenges Defendants' ability to confiscate his stimulus funds and use those confiscated funds to pay off his outstanding court fines, fees, costs, and restitution.  The Eighth Circuit has authoritatively said, in *Mahers v. Halford*, that using an inmate's money to pay that inmate's restitution obligations does not violate procedural due process.[50]   This Court has previously held (and reaffirms that holding in the case at bar) that *Mahers* "is authoritative as to restitution and highly persuasive as to court fines, fees, and costs."[51]   Accordingly, Mr. Hufford's procedural due process claim must be dismissed in its entirety: partially as moot and partially as the result of failing to state a claim on the merits.

## D.   Substantive Due Process

In the three test cases, the Court acknowledged that there are two different types of substantive due process claims that could be lodged against Act 1110.  One is the typical "tiers of scrutiny" claim.[52]   Under that framework, the critical question is whether the challenged law violates a fundamental right.  If yes, then the law is subjected to "strict scrutiny"; if no, then the

---

[49] *Hayes Master Docket*, (Doc. 422) at 23–24.

[50] 76 F.3d at 955–56.

[51] *Hayes Master Docket*, (Doc. 422) at 11 (citation omitted).

[52] *Id.* at 11–12.

law is subjected only to "rational basis" review.[53]   Here, Act 1110 does not infringe on any fundamental right.  The "right at issue [would] be the right of a prisoner to receive and spend generalized financial aid from the federal government. . . . [S]uch a right [is] not fundamental and therefore only rational basis review applie[s]."[54]  Act 1110 survives rational basis review because "diversion of the prisoners' federal relief and stimulus funds is rationally related to the State's legitimate interest in collecting court fines, fees, costs, and restitution, maintaining the statutorily mandated inmate welfare funds, and helping pay for other costs associated with housing inmates."[55]

The other possible substantive due process claim is a challenge to the enforcement of Act 1110.[56]   For a claim like that, the critical question under Eighth Circuit precedent is whether Defendants' conduct "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[57]   "Conscience shocking conduct only includes 'the most severe violations of individual rights that result from the brutal and inhumane abuse of official power.'"[58] The conduct alleged—confiscating stimulus payments pursuant to a state statute—doesn't even come close to an allegation of conscience-shocking conduct.   Mr. Hufford's substantive due process claim will be dismissed.

---

[53] *See Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020); *United States v. Ali*, 799 F.3d 1008, 1031 (8th Cir. 2015) (legislation regarding sentencing for convictions is reviewed under rational basis).

[54] *Hayes Master Docket*, (Doc. 422) at 12 (internal quotation marks and citation omitted).

[55] *Id.* at 12 (internal quotation marks and citation omitted).

[56] *Id.* at 12–16.

[57] *See Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013).

[58] *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (quoting *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012)).

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss.  Mr. Hufford's case is DISMISSED without prejudice in its entirety.[59]

IT IS SO ORDERED this 11th day of January 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[59] The Court understands that Mr. Hufford considers himself a "prevailing party" entitled to receive costs, such as his federal filing fee, from Defendants.  *See* Fed. R. Civ. P. 54(d)(1).  It's not entirely clear whether Mr. Hufford qualifies as a "prevailing party" in the case at bar.  *See Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017) ("When a case has been rendered moot, a prevailing party is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." (internal quotation marks and citation omitted)).  And it's also unclear whether one or more immunity doctrines would preclude taxing such costs to Defendants in this case.  Mr. Hufford is welcome to file a post-judgment motion for costs, and the Court will consider the propriety of shifting costs after receiving the benefit of adversarial briefing.